# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-CA-00401-COA

**UNION HILL MISSIONARY BAPTIST CHURCH, INC.**    APPELLANT

v.

**WILLIE B. CHAMPION, EDDIE CHAMPION, AWIA RICE, DIANE GOODEN, DAISY WILLIAMS, GLORIA SMITH, MARRANDA KING AND SHANNON WILLIAMS**    APPELLEES

| | |
|---|---|
| DATE OF JUDGMENT: | 03/08/2024 |
| TRIAL JUDGE: | HON. JAMES CHRISTOPHER WALKER |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | MATTHEW ALLEN BALDRIDGE |
| ATTORNEY FOR APPELLEES: | KENYA REESE MARTIN |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 06/03/2025 |
| MOTION FOR REHEARING FILED: | |

**BEFORE CARLTON, P.J., WESTBROOKS AND EMFINGER, JJ.**

**WESTBROOKS, J., FOR THE COURT:**

¶1.    Calvin Melton refused to leave his position as pastor of Union Hill Missionary Baptist Church despite an initial vote by the congregation to remove him. The church sought injunctive relief in the Madison County Chancery Court. The chancellor ordered and oversaw, in person, a second vote held at the church. On appeal, the Mississippi Supreme Court unanimously held that the question of who should be pastor is an ecclesiastical question that our courts lack jurisdiction to adjudicate under the ecclesiastical abstention doctrine. *Melton v. Union Hill Missionary Baptist Church* (*Union Hill I*), 377 So. 3d 974, 975-76 (¶3) (Miss. 2024). After the chancellor oversaw the vote on Melton's status as pastor,

and before the Mississippi Supreme Court's holding in *Union Hill I*, the chancellor oversaw another congregational vote on the question of who would serve as deacons and trustees for the church. Citing the mandate in *Union Hill I*, the chancery court subsequently vacated most orders and dismissed with prejudice the instant complaint related to the selection of the deacons and trustees. Union Hill appeals. We find that *Union Hill I* is dispositive to the issues presented and that the chancellor's dismissal of the complaint should therefore be affirmed.

## FACTS AND PROCEEDINGS

*The First Complaint and* Union Hill I

¶2.     Calvin Melton became the pastor of Union Hill Missionary Baptist Church in 2019. In 2021, the church voted unanimously (with forty-five members present) to not retain Melton as pastor. However, Melton continued preaching at the church. Union Hill filed a complaint for injunctive relief. The chancellor determined that it was unclear whether the church had spoken on who should be its pastor. Therefore, the chancellor entered an order finding that "the central issue is ecclesiastical employment" and that "a vote shall take place on Saturday, September 18, 2021 at 8:00 a.m. at the Union Hill Baptist Church in Flora[.] [T]his court shall facilitate and moderate the vote." While acknowledging "the limited roles chancellors have in ecclesiastical employment cases[,]" the chancellor said, "[T]here are a minority of cases which hold a chancellor is permitted to retain subject matter jurisdiction in order to allow the church an opportunity to actually speak."

¶3.     The outcome of the second vote was to retain Melton as pastor. However, on a

2

subsequent motion involving new evidence related to the church bylaws, the chancellor entered a final order holding that Melton would no longer be pastor of the church. Melton appealed. The Mississippi Supreme Court unanimously held that the chancellor was without jurisdiction to order and oversee in person the church's second vote on who would be pastor. The Court therefore reversed and vacated the chancellor's orders.

*The Second Complaint and* Union Hill II *(the instant case)*

¶4.     Following the first complaint for injunctive relief, Union Hill filed a second complaint for injunctive relief related to the church's selection of deacons and trustees. Given that the appeal of *Union Hill I* was pending before the Mississippi Supreme Court, the defendants moved to stay the chancellor's consideration of the complaint. The chancellor denied the motion to stay and oversaw, in person, a second vote at the church on October 22, 2022, to determine who should serve as church deacons and trustees.[1] The chancellor certified the vote and issued a judicial order ratifying the church officers. Subsequently, when the Mississippi Supreme Court decided *Union Hill I*, the defendants in *Union Hill II* moved for the chancery court to dismiss this action and vacate all orders before the chancery court. Citing *Union Hill I*, the chancellor dismissed the action with prejudice.

¶5.     Union Hill appeals.

## DISCUSSION

¶6.     Jurisdiction is a question of law that appellate courts review de novo. *Union Hill I*, 377 So. 3d at 978 (¶12); *see also Schmidt v. Catholic Diocese of Biloxi*, 18 So. 3d 814, 821

---

[1] The Appellees also assert that the chancellor ordered the arrest of a private church security guard the Appellees had hired.

3

(¶13) (Miss. 2009) ("A dismissal for lack of subject matter jurisdiction is reviewed de novo."). "We will not interfere with or disturb a chancellor's findings of fact unless those findings are manifestly wrong [or] clearly erroneous, or an erroneous legal standard was applied." *Pilgrim Rest Missionary Baptist Church ex rel. Bd. of Deacons v. Wallace*, 835 So. 2d 67, 71 (¶7) (Miss. 2003).

¶7. The October 2022 voting process determining who should serve as church deacons and trustees of Union Hill Missionary Baptist Church was substantially similar to the September 2021 vote determining whether the congregation would retain Melton as pastor. Both votes were ordered by the chancellor and overseen in person at the church by the chancellor.

¶8. In holding that the ecclesiastical abstention doctrine precludes secular jurisdiction over this scenario, the Mississippi Supreme Court stated:

> The chancellor's self appointment to oversee a congregational election outside the courthouse and inside a house of worship is far removed from the judicial function and treads heavily upon Mississippi's Constitution and the Establishment Clause. Thus, the chancellor's actions, though undoubtedly well intended, amounted to a constitutional violation, resulting in a blending of church and state. This unusual arrangement was the antithesis of the constitutional doctrine that historically has demanded separation of church and state.

*Id.* at 980 (¶17). The ecclesiastical abstention doctrine requires:

> For where resolution of the disputes cannot be made without extensive inquiry by civil courts into religious law and polity, the First and Fourteenth Amendments mandate that civil courts shall not disturb the decisions of the highest ecclesiastical tribunal within a church of hierarchical polity, but must accept such decisions as binding on them, in their application to the religious issues of doctrine or polity before them.

*Catholic Diocese of Jackson v. De Lange*, 341 So. 3d 887, 892 (¶16) (Miss. 2022) (quoting *Serbian E. Orthodox Diocese for U.S. of Am. & Canada v. Milivojevich*, 426 U.S. 696, 709 (1976)). Further, "the First Amendment places ministerial church-employment decisions beyond the reach of courts." *Greater Fairview Missionary Baptist Church v. Hollins*, 160 So. 3d 223, 229 (¶22) (Miss. 2015).

¶9. The Supreme Court rejected the argument that the chancellor's involvement was permissible in a limited capacity under *Pilgrim Rest*, 835 So. 2d at 68 (¶¶1, 71). *Union Hill I*, 377 So. 3d at 979-80 (¶¶14-17). In *Pilgrim Rest*, a chancellor ordered an election by voting members of a church "to decide whether to terminate the services of its pastor." *Pilgrim Rest*, 835 So. 2d at 69 (¶4). The Mississippi Supreme Court held that the chancellor "merely established a procedure whereby the members of Pilgrim Rest could vote on whether they wanted to retain [the pastor]. She did so in the absence of clear by-laws and a higher church authority." *Id.* at 72 (¶11). Significantly, the "chancellor did not rule on whether [the individual] was entitled to be pastor." *Id.* Instead, jurisdiction was limited to a determination of "whether the decision concerning 'who shall preach from the pulpit' was made by the proper church authority." *Id.*; *see also Hollins*, 160 So. 3d at 230-31 (¶27) (holding that a chancellor lacked the authority to vacate a church vote terminating a pastor and to order a new one).

¶10. The scenario before us, which is substantially similar to the scenario in *Union Hill I*, does not fall within the scope of the *Pilgrim Rest* exception. As the Mississippi Supreme Court held in *Union Hill I*, "[n]ot only was the chancellor without authority to order the

5

congregation to conduct a second election; but he also was bereft of authority to preside over a church meeting." *Union Hill I*, 377 So. 3d at 980 (¶17). Given that *Union Hill I* is dispositive, the only appropriate disposition for the chancery court was to dismiss the case due to lack of jurisdiction.

## CONCLUSION

¶11. This congregational dispute implicates an ecclesiastical question. Our courts are without jurisdiction to adjudicate such matters, and therefore the chancery court did not err in dismissing the case. We affirm the chancellor's dismissal of the case for lack of jurisdiction, deeming all the chancellor's other orders vacated. *See Id.* at 980 (¶19).

¶12. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., McDONALD, LAWRENCE, McCARTY, EMFINGER, WEDDLE AND ST. PÉ, JJ., CONCUR.**